No. 24-6576

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

JEFFREY POWERS, et al.,

Plaintiffs-Appellees,

v.

DENIS RICHARD McDONOUGH, et al.,

Defendants-Appellants

———————————

On Appeal from the United States District Court
for the Central District of California

———————————

## REPLY IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

E. MARTIN ESTRADA
  *United States Attorney*

CHARLES W. SCARBOROUGH
DANIEL WINIK
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*

VA agrees with plaintiffs on the need to ensure every Veteran has a safe and stable home, and VA is committed to doing so within the legal authorities and obligations specified by Congress. But the district court disregarded those constraints and arrogated to itself the authority Congress delegated to VA. The court's extraordinary injunction should be stayed pending review.

## I. The Government Is Likely To Prevail On The Merits

A. The Veterans Judicial Review Act (VJRA) bars jurisdiction over plaintiffs' Rehabilitation Act claims against VA. That is clear from *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc), which held that the VJRA barred claims challenging "delays in the [VA's] provision of mental health care and … adjudication of … benefits" because determining the delays' reasonableness would require "review[ing] the circumstances surrounding the VA's provision of benefits to individual veterans." *Id.* at 1026-1027. The VJRA equally bars claims that housing "is needed to give veterans meaningful access to their disability benefits," because adjudicating those claims would likewise require "a review and analysis of individual veterans' situations." *Valentini v. Shinseki*, 2012 WL 12882704, at *4 (C.D. Cal. June 19, 2012).

In denying a stay, the district court offered two responses, which plaintiffs repeat (Opp. 5-6). First, the court characterized VJRA preclusion as limited to "decisions that the [VA] Secretary has actually made in the context of an individual veteran's VA benefits proceedings." SA10. But that conflicts with *Veterans for Common Sense*. The Court's rationale there was not that VA had actually decided, in individual cases, how much

delay to impose. It was that determining the delays' reasonableness would require "review[ing] the circumstances surrounding the VA's provision of benefits to individual veterans," 678 F.3d at 1027. So too here: Plaintiffs' claims require determining whether "individual veterans" have meaningful access and, if not, what accommodations they need.

Tellingly, plaintiffs and the district court focus less on this Court's precedent than on *Broudy v. Mather*, 460 F.3d 106 (D.C. Cir. 2006). But *Broudy* does not support them. The claim there was that the Department of Defense had improperly withheld information about the plaintiffs' exposure to radiation, leaving VA to make disability determinations with inaccurate or incomplete information. The D.C. Circuit held that the VJRA did not bar jurisdiction because the VA Secretary had not "made an 'actual decision' on any issues that the parties [were] asking the District Court to decide." *Id.* at 114. But that conclusion—in a case based on the allegedly unlawful withholding of information by a different agency—is inapposite here, where plaintiffs challenge VA's own determinations related to providing Veterans with healthcare.

To the extent plaintiffs address *Veterans for Common Sense*, they focus (Opp. 6) on the holding that the VJRA did not bar a challenge "to procedures affecting adjudication of claims," 678 F.3d at 1035. But resolving that challenge would not have "require[d] review of the circumstances of individual requests for benefits by veterans." *Id.* at 1034. That is not true here. Plaintiffs' own merits argument (*e.g.*, Opp. 8) relies on evidence about individual Veterans' circumstances and particular challenges in accessing care.

The district court's other rationale, likewise echoed by plaintiffs, was that applying the VJRA would create a "jurisdictional void" (SA14; Opp. 6). It would not. Plaintiffs' claim that they need housing to access their benefits is effectively a claim that their benefits are presently inadequate. If a veteran raised such a claim through the administrative process and VA denied it, that decision would be reviewable by the Board of Veterans' Appeals, which has jurisdiction over "[a]ll questions in a matter which under [the VJRA] is subject to decision by the Secretary." 38 U.S.C. § 7104(a). And the Board's decision would be reviewable by the Court of Appeals for Veterans Claims, *id.* § 7252, whose decisions are reviewable by the Federal Circuit, *id.* § 7292, and ultimately the Supreme Court.

Indeed, as *Veterans for Common Sense* explains, a principal aim of the VJRA was to overrule *Traynor v. Turnage*, 485 U.S. 535 (1988), which had held that federal courts could review a claim that "VA's regulations conflicted with § 504 of the Rehabilitation Act." *Veterans for Common Sense*, 678 F.3d at 1021. The VJRA thus clearly provides for review, through its exclusive scheme, of claims that VA is providing benefits in a manner inconsistent with the Rehabilitation Act.

The district court was also incorrect that it "would render Congress' intentions meaningless" (SA13) to require initial adjudication by an agency of claims that the agency violated the Rehabilitation Act. Even outside the VJRA context, most courts have concluded that Section 504 of the Act does not imply a private right of action against federal programs and activities; it is properly enforced against agencies through

- 3 -

administrative proceedings, with subsequent judicial review. *Moya v. DHS*, 975 F.3d 120, 128 (2d Cir. 2020); *Clark v. Skinner*, 937 F.2d 123, 125 (4th Cir. 1991); *Cousins v. Secretary of the U.S. Dep't of Transp.*, 880 F.2d 603, 605-611 (1st Cir. 1989) (en banc).  For other agencies, judicial review is under the Administrative Procedure Act; here, it is through the VJRA scheme.  Among courts of appeals, only this Court has construed Section 504 as implying a private right of action (where not precluded by the VJRA).  *See Doe v. Attorney General*, 941 F.2d 780, 794 (9th Cir. 1991), *abrogated on other grounds by Lane v. Pena*, 518 U.S. 187 (1996).  Requiring administrative presentation of Rehabilitation Act complaints does not neuter the Act or prevent judicial review; it simply defers judicial review until the agency has had an opportunity to bring its programs into compliance or explain why it believes they are already compliant.

B. The government is also likely to prevail on the merits of the Rehabilitation Act claims.

1. As to the *Olmstead* claim, plaintiffs and the district court have not explained how the record shows plaintiffs face a serious risk of institutionalization.  In denying a stay, the district court invoked (SA16) prior findings that "homeless veterans … experience an institutional circuit of temporary housing, emergency departments, psychiatric institutions, and jails in order to receive healthcare" and that, "[w]ithout permanent supportive housing, they are left with no options but to accept institutionalization or go without services," *Powers v. McDonough*, 2024 WL 4100866, at *47 (C.D. Cal. Sept. 6, 2024).  Plaintiffs' opposition (at 7) does the same.  But the evidence did not justify those

findings. The cited evidence (A1849-1850, A3428, A4241-4244, A4319-4321) suggests that some homeless veterans may cycle into and out of jails and hospitals. But it does not show that they "accept institutionalization" in those settings, 2024 WL 4100866, at *47, because they lack access to healthcare they would have obtained on-Campus if they had housing there. That is what plaintiffs needed to show on this claim: that a lack of housing places them at serious risk of not receiving services in "'the most integrated setting appropriate to [their] needs.'" *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (1999).

2.      The record likewise does not support plaintiffs' claim that a lack of on-Campus housing deprives them of meaningful access to healthcare. In denying a stay, the district court identified as "[t]he best evidence" the fact "that when there was no housing available on" Campus, unhoused Veterans chose a location just outside of the Campus to create "a collection of tents" known as Veterans Row. SA17. But the court identified no evidence that the reason Veterans chose to congregate in that location was that they would otherwise have lacked access to on-Campus services. That the court regarded the location of Veterans Row as "[t]he best evidence" on the meaningful-access claim underscores the lack of more probative evidence.

The district court, echoed by plaintiffs (Opp. 8), also cited evidence of challenges faced by particular Veterans—like Laurianne Wright, for whom an "'hours-long journey'" to the Campus "would be 'excruciating.'" SA18. But Ms. Wright's journey takes hours only because she lives "65 miles away." 2024 WL 4100866, at *4. The district

- 5 -

court made no finding that Ms. Wright was unable to access more proximate housing. More importantly, there is no basis to believe that Ms. Wright's particular challenges are common to the plaintiff class. Whether or not the evidence would have supported a finding that Ms. Wright needed on-Campus housing to access her benefits—a determination VA could have made through the administrative process had she proceeded as the VJRA requires—the evidence was insufficient to support a global finding that housing was a necessary accommodation for the plaintiff class, given the significant differences among the challenges faced by plaintiffs in varied locations with varied needs.

3. Plaintiffs and the district court have also persisted in failing to address evidence that providing the large quantity of housing required by the court would fundamentally alter VA's programs.

In denying a stay, the district court reiterated its view that, because VA "'already administer[s]' housing on or near the campus, … '[i]ncreasing the amount, speed, and quality of'" housing "does not impose an unreasonable burden." SA19. But it failed to respond to VA's argument that requiring far more on-Campus housing, to be built faster and at higher cost, would fundamentally alter VA's programs by forcing VA to reallocate limited resources toward housing in one location for Veterans with particular disabilities and away from diverse housing options for Veterans of varied needs and preferences, including other Veterans with disabilities, across Greater Los Angeles.

The district court and plaintiffs also continue to dismiss the significance of the costs the judgment imposes on VA and the extent to which those costs would displace

other priorities. They emphasize the size of VA's annual budget. SA19; Opp. 8. But the budget is barely sufficient to fund VA's programs, including benefits for millions of veterans and the salaries of more than 400,000 employees at hundreds of medical facilities, benefits offices, and cemeteries nationwide. No one familiar with the challenges of managing a federal agency in a difficult budgetary environment would regard as insignificant an expense in the tens of millions of dollars.

C.     Finally, VA is likely to prevail on the land-use issues it raises on appeal.

1.     Plaintiffs lack standing to pursue their charitable-trust claim. In denying a stay, the district court invoked (SA22) an exception to the general rule that beneficiaries of a charitable trust cannot sue to enforce it—a rule that has Article III significance because federal jurisdiction is limited to the sorts of particularized "harm traditionally recognized as providing a basis for a lawsuit in American courts," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). *See* Mot. 16-17. But that exception applies only where "the class of beneficiaries" of the trust is "'sharply defined' and 'limited in number.'" SA22. The court determined that *the plaintiff class* is defined and limited in that way. *Id.* But that is beside the point, because the class of beneficiaries of the trust supposedly created by the 1888 deed is much broader and more amorphous than the plaintiff class; it includes all Veterans with disabilities in the Western United States.

2.     Nor did the 1888 deed create a charitable trust enforceable against the government—both because the relevant language stated a "purpose" rather than a "condition," *Farquhar v. United States*, 1990 WL 121076, at *3 (9th Cir. Aug. 21, 1990)

(unpublished), and because the Leasing Act and Campus Improvement Act do not accept (much less unambiguously accept) fiduciary obligations under the deed.

In denying a stay, the district court continued to describe the deed language as a "condition," notwithstanding this Court's contrary conclusion in *Farquhar*. SA23. And plaintiffs and the district court continue to characterize the Leasing Act and Campus Improvement Act as "'mirror[ing] the types of fiduciary duties that trustees traditionally assume'" (SA23; Opp. 12), without explaining how those Acts could retroactively create trust duties under the 1888 deed—a document not referenced in either statute that predated them by more than 125 years. The Acts impose constraints on VA's management of the Campus, but they are statutory constraints, not privately enforceable fiduciary duties under a trust supposedly created in 1888.

3.　　Finally, plaintiffs and the district court have offered no sound basis for the orders barring VA from entering new agreements with UCLA, Brentwood, Bridgeland, or SafetyPark and requiring VA to enter a new lease with Brentwood, subject to judicial oversight, on terms negotiated between plaintiffs and Brentwood.

In denying a stay, the district court opined that "[o]verseeing any new agreements is the only way for the Court to prevent further injury to Plaintiffs." SA24; *see* Opp. 13. But on that theory, a court invalidating an agency action could always impose oversight of the agency's subsequent actions; after invaliding a rule, for example, a court could superintend the consideration of a new rule on remand. That is not the law. If plaintiffs believe any future agreement regarding Campus land is invalid, they can challenge

it then.  But speculation about future illegality cannot justify the continuing oversight the district court imposed.

## II.    The Equitable Factors Favor A Stay

A.    The government faces obvious harm absent a stay:  The district court's orders would require VA to divert funds from projects benefiting Veterans nation-wide—funds it could not recoup if this Court reversed.

Plaintiffs (Opp. 16) and the district court (SA26) suggest that monetary expend-itures are not irreparable harms.  But the harm here is not just that VA would have to spend money but that doing so would require displacing other priorities.  VA would have to reorient its housing strategy in Los Angeles, diminishing its ability to serve the overall population of Veterans there (*see supra* p. 6), and cut other projects nationwide (Mot. 21-22).  In any event, even purely monetary harm is reparable only "if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984); *see Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers); *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018).  VA cannot recoup expenditures to comply with the judgment dur-ing this appeal.

Plaintiffs note (Opp. 17) recent communications between VA and Congress in-dicating that VA's budget shortfall for this fiscal year is somewhat below the $12 billion figure cited in our motion (at 21).  As plaintiffs' supplemental opposition explains, we filed a declaration (Supp. Opp. Ex. A) correcting that figure.  But the shortfall is still "in

the billions of dollars" (*id.*), and its magnitude is irrelevant; what matters is that VA would need to divert funds from elsewhere to comply with the judgment.

Plaintiffs and the district court also suggest that the government's costs are "speculative," the government can afford them, and the government would spend money anyway to build the housing contemplated by the Master Plan. SA25-26; Opp. 16-17. But any imprecision as to the amount of costs does not make their existence speculative. And whether or not VA can afford to pay for housing that is appropriate and consistent with its authorities, it would be irreparably harmed by having to comply with legally groundless orders inconsistent with its priorities.

B.      Finally, a stay would not harm plaintiffs. The supply of temporary housing on and near Campus already exceeds demand, and Veterans can access free transportation to and from on-Campus appointments. Mot. 23.

Although plaintiffs acknowledge the existence of transportation, they object (Opp. 15) that it is "'outsource[d] … to private charities'" rather than provided directly by VA. But they do not explain why that matters. And while they assert that the services "often do not provide transportation … at times when the veterans need it," their only source is a finding about a single shuttle service, 2024 WL 4100866, at *54. Plaintiffs are correct that, for some Veterans, transit itself presents challenges. Opp. 16. But as discussed above (at 6), particular challenges faced by individual Veterans cannot justify the sweeping injunction and cannot justify denying a stay.

More importantly, while plaintiffs (Opp. 15) and the district court (SA31) criticize the quality of the available housing, they do not dispute that sheltered beds are available for Veterans on and near Campus (Mot. 23). VA is committed to combating the devastating consequences of homelessness for Veterans with disabilities, and it would not be seeking this stay if it thought doing so would jeopardize Veterans' safety. Given the current availability of beds, there is no basis to believe that a stay will prevent Veterans from obtaining needed shelter on or near Campus. Far from addressing an unmet need, the district court's sprawling injunction thwarts VA's efforts to serve plaintiffs and all Veterans consistent with its authority.

## CONCLUSION

This Court should stay the judgment pending appeal, except insofar as it invalidates VA's land-use agreements with Bridgeland, SafetyPark, Brentwood, and UCLA.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
    General*

E. MARTIN ESTRADA
  *United States Attorney*

CHARLES W. SCARBOROUGH

*/s/ Daniel Winik*
DANIEL WINIK
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff
  Civil Division, Room 7245
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-8849
  daniel.l.winik@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this reply complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Garamond, a proportionally spaced font, and that it complies with the type-volume limitation of Circuit Rules 27-1(1)(d) and 32-3(2) because it contains 2,799 words, according to Microsoft Word.

*/s/ Daniel Winik*
Daniel Winik