No. 24-6576

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JEFFREY POWERS, *et al.*,

*Plaintiffs–Appellees*,

v.

DENIS RICHARD MCDONOUGH,

in his official capacity as Secretary of Veterans Affairs, *et al.*,

*Defendants–Appellants*.

On Appeal from the United States District Court
for the Central District of California
Lead Case No. 2:22-cv-08357-DOC-KS
Hon. David O. Carter

**BRIEF OF *AMICI CURIAE* LEGAL SCHOLARS
IN SUPPORT OF PLAINTIFFS–APPELLEES**

Evelyn Danforth-Scott
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
425 California Street, Suite 700
San Francisco, CA 94104
Tel: (415) 343-0780
Fax: 1(866) 339-7328
edanforth-scott@aclu.org

Bridget Lavender
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
blavender@aclu.org

Michelle Fraling
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th Street NW, 6th Floor
Washington, DC 20005
Tel: (917) 710-3245
michelle.fraling@aclu.org

*Counsel for Proposed* Amici Curiae *Legal Scholars*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................... ii

IDENTITY AND INTEREST OF *AMICI CURIAE* ...................................1

INTRODUCTION ...........................................................................................2

ARGUMENT ...................................................................................................3

I.    The District Court properly exercised jurisdiction over the Veterans'
Rehabilitation Act claims....................................................................3

    A.    Jurisdiction stripping language must be construed narrowly. ...............3

    B.    The text of Section 511 precludes only district court "review"
of previous benefit determinations—which the Veterans did not
seek. ...................................................................................................7

    C.    The Veterans' Rehabilitation Act claims do not implicate
distinctive agency expertise. ............................................................16

    D.    The Government's position would deprive veterans of any
meaningful opportunity to enforce their rights under the
Rehabilitation Act.............................................................................19

II.    This plain text reading of Section 511 is fully consistent with this Court's
decision in *VCS*..................................................................................23

CONCLUSION ..............................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Acre v. United States*,
    899 F.3d 796 (2018) ...................................................................4, 5

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ............................................................... 18, 23

*Axon Enter. v. FTC*,
    598 U.S. 175 (2023) ................................................................ passim

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015) .....................................................................16

*Blue Water Navy Viet. Veterans Ass'n v. McDonald*,
    830 F.3d 570 (D.C. Cir. 2016) .........................................................2, 7

*Broudy v. Mather*,
    460 F.3d 106 (D.C. Cir. 2006) ............................................. 2, 13, 26

*Camacho v. Nicholson*,
    21 Vet. App. 360 (Vet. App. 2007)....................................... 21, 23

*Dismuke v. United States*,
    297 U.S. 167 (1936).......................................................................3

*Ex parte Fahey*,
    332 U.S. 258 (1947).....................................................................10

*FERC v. Elec. Power Supply Ass'n*,
    577 U.S. 260 (2016).....................................................................12

*Fischer v. United States*,
    603 U.S. 480 (2024)............................................................. 10, 13

*Floyd-Mayers v. Am. Cab Co.*,
    732 F. Supp. 243 (D.D.C. 1990) .....................................................17

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010).......................................................................6

*Hanlin v. United States,*
    214 F.3d 1319 (Fed. Cir. 2000) .................................................. 13, 14

*In re Creech,*
    119 F.4th 1114 (9th Cir. 2024) ...........................................................10

*In re United States,*
    884 F.3d 830 (9th Cir. 2018) ..............................................................10

*J.L. v. Social Sec. Admin.,*
    971 F.2d 260 (9th Cir. 1992) ..............................................................18

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) .....................................................................5, 19

*Lane v. Pena,*
    518 U.S. 187 (1996) ...........................................................................18

*McNary v. Haitian Refugee Ctr., Inc.,*
    498 U.S. 479 (1991) ........................................................................6, 22

*Monk v. United States,*
    No. 3:22-CV-1503, 2025 WL 473590 (D. Conn. Feb. 12, 2025) ..................7, 14

*Or. Nat. Res. Council v. U.S. Forest Serv.,*
    834 F.2d 842 (9th Cir. 1987) ................................................................4

*Reno v. American-Arab Anti-Discrimination Comm.,*
    525 U.S. 471 (1999) .............................................................................5

*SEC v. Jarkesy,*
    603 U.S. 109 (2024) .............................................................................5

*Sierra v. City of Hallandale Beach,*
    904 F.3d 1343 (11th Cir. 2018) ..........................................................17

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) .............................................................................8

*Smith v. Berryhill,*
    587 U.S. 471 (2019) .............................................................................3

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013).................................................................................4

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)...........................................................................6, 19

*Traynor v. Turnage*,
485 U.S. 535 (1988)................................................................. 27, 28, 29

*Tunac v. United States*,
897 F.3d 1197 (9th Cir. 2018)...........................................................2, 8

*Veterans for Common Sense v. Shinseki*,
678 F.3d 1013 (9th Cir. 2012)................................................... passim

*Wilkie v. Robbins*,
551 U.S. 537 (2007)..............................................................................4

*Wong v. United States*,
373 F.3d 952 (9th Cir. 2004)................................................................4

## Statutes

28 U.S.C. § 1331 ...................................................................................4

29 U.S.C. § 794.................................................................... 17, 18, 23

38 U.S.C. § 5100.................................................................................23

38 U.S.C. § 511 ......................................................................... passim

38 U.S.C. § 7104.................................................................................19

38 U.S.C. § 7251.................................................................................19

38 U.S.C. § 7261.................................................................................19

38 U.S.C. § 7292.................................................................................19

42 U.S.C. § 2000d–2..........................................................................18

8 U.S.C. § 1252(g)................................................................................5

iv

## Other Authorities

Federal Defs.' Consolidated Reply Br. in Supp. of their Mot. to Dismiss Pls.'
First Am. Compl.,
ECF No. 57, *Powers v. McDonough*, 732 F.Supp.3d 1184 (C.D. Cal.
2024) ....................................................................................................16

## Regulations

38 C.F.R. § 20.3(e) ...............................................................................9, 20

38 C.F.R. § 3.1(p) .....................................................................................20

## Legislative Materials

H.R. Rep. No. 100-963 (1988),
*reprinted in* 1988 U.S.C.C.A.N. 5782) ....................................... 26, 28

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

Amici Erwin Chemerinsky, David Cole, Pamela Karlan, Judith Resnik, Laurence Tribe, Michael Wishnie, and Adam Zimmerman are law professors whose scholarship focuses on constitutional law, federal civil rights law, the jurisdiction of the federal courts, alternative adjudicatory schemes, and the law of administrative agencies. They have published on these topics in a variety of venues, including law reviews, books, and popular media outlets. Among the amici are law professors who have also litigated major cases on structural constitutional law, the federal civil rights statutes, agency adjudication processes, and the power of the Article III courts, including as lead counsel delivering oral argument before the United States Supreme Court.

Given the importance of proper interpretation of statutes affecting the federal courts' jurisdiction, and that issue's centrality to their teaching and scholarship, amici believe they can be of assistance to this Court.[2]

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(2), amici submit this brief without an accompanying motion for leave to file because all parties before this Court have consented to its filing. Amici state that: (i) neither party's counsel authored the brief in whole or in part; (ii) neither party, nor their counsel, contributed money that was intended to fund preparing or submitting the brief; and (iii) no person other than amici, their members, or their counsel contributed money that was intended to fund preparing or submitting the brief.

[2] Amici speak in their personal capacities, and not on behalf of the institutions with which they are affiliated.

## INTRODUCTION

The Veterans' Judicial Review Act ("VJRA") does not withdraw district court jurisdiction over the plaintiff Veterans' Rehabilitation Act claims. The jurisdiction-stripping language in the VJRA prohibits federal district courts from second-guessing the Secretary of Veterans Affairs' previous judgments in individualized benefit determinations. 38 U.S.C. § 511; *see, e.g.*, *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc) ("*VCS*"). But, consistent with Section 511's plain text and the Ninth Circuit's longstanding principle that even indisputable jurisdiction-stripping language must be narrowly construed, its scope is limited to "bar[ring] review in the district court of decisions that the Secretary has actually made." *Blue Water Navy Viet. Veterans Ass'n v. McDonald*, 830 F.3d 570, 575 (D.C. Cir. 2016). Section 511 does not vest the VJRA's special review process with exclusive purview over all statutes that implicate veterans' care, particularly not those outside the agency's core areas of expertise. *Broudy v. Mather*, 460 F.3d 106, 112 (D.C. Cir. 2006); *cf. Axon Enter. v. FTC*, 598 U.S. 175, 186 (2023). It targets only determinations about benefits actually offered by the agency, not "all action or inaction by the VA." *Tunac v. United States*, 897 F.3d 1197, 1203 (9th Cir. 2018) (citation omitted).

Here, the Veterans did not collaterally attack the Secretary's prior benefits decisions. Instead, they sought reasonable accommodations to access benefits the

Secretary already granted them—accommodations guaranteed outside of statutes the VA administers, and which do not qualify as benefits within the agency's own definition of the term. The district court therefore did not impermissibly "review" agency benefits decisions; it simply acknowledged those decisions as fact, something Article III courts routinely do for expert agency determinations.

Strengthening the case for jurisdiction, the Government's position would deprive the Veterans of a meaningful forum to air their claims. This Court should avoid reading the one statute as foreclosing relief under the other—a result Congress "rarely" expects, even when it crafts otherwise-exclusive agency review schemes. *Axon*, 598 U.S. at 186.

## ARGUMENT

### I. The District Court properly exercised jurisdiction over the Veterans' Rehabilitation Act claims.

#### A. Jurisdiction-stripping language must be construed narrowly.

Congress drafts legislation against the backdrop of a "strong presumption" in favor of "judicial review of administrative action." *Smith v. Berryhill*, 587 U.S. 471, 483 (2019) (citation omitted). To rebut that "heavy" presumption, *id.*, a statute must contain "compelling" language to the contrary, *Dismuke v. United States*, 297 U.S. 167, 172 (1936). Thus, access to Article III courts typically "will not be cut off" unless the statutory text supplies "a persuasive reason to believe that such specifically was the purpose of Congress." *Or. Nat. Res. Council v. U.S. Forest Serv.*,

834 F.2d 842, 851 (9th Cir. 1987) (citation omitted). Put differently, courts need not "guess" whether a statute was designed to "divest district courts of jurisdiction." *Axon*, 598 U.S. at 207 (Gorsuch, J., concurring). Where Congress "holds that view," it "simply tells us." *Id.* at 208. And where Congress gives no such unequivocal textual command, Article III courts retain their "virtually unflagging" duty to hear cases that fall within their jurisdiction, be it through the federal-question statute, 28 U.S.C. § 1331, or any other grant of authority. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (citation omitted).

This presumption against jurisdiction-stripping applies with equal force for statutes that inarguably limit *some* aspects of federal courts' reach. The "general rule" is to "resolve any ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation." *Acre v. United States*, 899 F.3d 796, 801 (2018) (citation omitted). Accordingly, jurisdiction-stripping language should not be read "broadly" whenever it can be "subject to a 'much narrower' interpretation." *Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004), *abrogated by Wilkie v. Robbins*, 551 U.S. 537 (2007) (citation omitted)).

Consider, for example, this Court's decision in *Acre v. United States*, 899 F.3d 796 (9th Cir. 2018). There, this Court held that a non-citizen could proceed in district court with FTCA claims based on injuries he suffered when the Attorney General—in violation of a court order—wrongfully executed a removal order against him.

4

8 U.S.C. Section 1252(g) strips Article III courts of jurisdiction over "any cause or claim . . . arising from the decision or action by the Attorney General" to "execute removal orders." But the Ninth Circuit declined to read that language to literally "extend[] to *any* action taken in connection with a removal order," including the illegal actions that precipitated the plaintiff's claims. *Acre*, 899 F.3d at 799 (emphasis in original). Rather, relying on "the express instructions of the Supreme Court, our precedent, and common sense," it construed the scope of the relevant jurisdiction-stripping provision "narrowly" and allowed the suit to proceed. *Id.* at 800; *see also, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 292–93 (2018) (plurality) (similar); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (similar).

Reflecting particular reluctance to cede Article III courts' adjudicative authority to Executive Branch agencies, additional limiting principles govern the scope of "special statutory review scheme[s]" that prohibit district courts from "exercising jurisdiction over challenges to federal agency action" in favor of frontline agency review. *Axon,* 598 U.S. at 185; *cf. SEC v. Jarkesy*, 603 U.S. 109, 127–32 (2024) (emphasizing the limits of Congress's power to delegate adjudicative authority to federal agencies). First, those kinds of jurisdictional directives must be read against the presumption that "the point of special review provisions" is "to give the agency a heightened role in the matters it customarily handles, and can apply

5

distinctive knowledge to." *Axon*, 598 U.S. at 186. Where a claim falls outside the agency's bailiwick, "courts are at no disadvantage" to evaluate it, obviating Congress's underlying rationale for exclusive agency review. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 (2010); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994).

Second is the understanding that "Congress rarely allows claims about agency action to escape effective judicial review," even where it modifies the standard Article III review process through a special statutory review scheme. *Axon*, 598 U.S. at 186. Although effective judicial review in this context does not *always* "demand a district court's involvement," certain claims would essentially be lost if they began in front of an administrative agency rather than a district court. *Id.* at 190. That includes claims where the agency cannot develop an "adequate administrative record" in a manner analogous to the district court's fact-finding role. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991). Because withdrawing the possibility of meaningful factual development amounts to "the practical equivalent of a total denial of judicial review," those sorts of claims typically fall outside of special statutory review schemes, and thus remain subject to district court jurisdiction. *Id.*

**B.    The text of Section 511 precludes only district court "review" of previous benefit determinations—which the Veterans did not seek.**

These interpretive principles make plain that the district court properly exercised jurisdiction over the Veterans' Rehabilitation Act claims. Section 511 contains two commands. First, it directs that the Secretary "shall decide" any "questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Second, outside of a special review scheme set forth elsewhere in the VJRA that funnels claims through the Court of Veterans Appeals and then the Federal Circuit, Section 511 makes those decisions "final and conclusive," prohibiting "any court" from "review[ing]" them through "action[s] in the nature of mandamus or otherwise." *Id.*

Read together—and against the background presumption that jurisdiction-stripping language is to be narrowly construed—these two portions of Section 511 withdraw jurisdiction only over a specific subset of claims. Its text targets efforts to collaterally seek "review in the district court of decisions that the Secretary has actually made," *Blue Water Navy Viet. Veterans Ass'n*, 830 F.3d at 575, in "the context of an individual veteran's VA benefits proceedings," *VCS*, 678 F.3d at 1023; *see also, e.g.*, *Monk v. United States*, No. 3:22-CV-1503, 2025 WL 473590, at *8 (D. Conn. Feb. 12, 2025) ("Section 511 bars district courts from hearing many cases that seek collateral review of individual benefits applications . . . .").

7

Multiple aspects of Section 511 require this reading. For starters, the first portion of Section 511, which vests the Secretary with decision-making authority, makes plain that it does not address "all action or inaction by the VA." *Tunac*, 897 F.3d at 1203 (citation omitted). On its face, this portion of the statute instead empowers the Secretary with respect to "the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). That language sharply delimits Section 511, training the statute's command only on "benefit[]" schemes the VA actually "provi[des]." *Id.*

Strengthening that conclusion, this first portion of Section 511 encompasses only those questions that are "necessary to a decision" the Secretary makes with respect to "the provision of benefits." *Id.* Because topics outside the VA's ongoing, agency-specific mandate would not be strictly "necessary" to the agency's benefits determinations, this modifier underscores that Section 511 is limited to decisions arising under benefits schemes the VA Secretary actually administers, not whatever choices the Secretary might conceivably make to follow other federal laws or fulfill other responsibilities.

The VA's own interpretation of the VJRA, which reflects "a body of experience and informed judgment" to which this Court may "properly resort for guidance," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), confirms this reading of Section 511. The agency's regulations implementing the VJRA define the

"benefits" that are subject to the VJRA process as "any payment, service, commodity, function, or status," for which "entitlement" has been determined "*under laws administered* by the Department of Veterans Affairs." 38 C.F.R. § 20.3(e) (emphasis added). In other words, even the VA understands the VJRA as governing only determinations that arise under statutes the agency itself administers, rather than any choice the agency may make to comply with other federal laws.

The second portion of Section 511, which contains the statute's actual jurisdiction-stripping language, is equally targeted. Its text states that—save for the VJRA's allowance of review through the Court of Veterans Appeals and the Federal Circuit—the Secretary's "decision[s]" are "final and conclusive" and not subject to "review[]" by "any court." 38 U.S.C. § 511(a). By choosing to describe Section 511's jurisdictional limitation in those terms, Congress made plain that its aim was to prevent veterans from second-guessing the benefits determinations addressed in the first portion of Section 511 (which are to be "final") through Article III courts (which are prohibited from "review[ing]" those "decisions"). *Id.* In other words, Congress withdrew jurisdiction only for a narrow class of claims: challenges to benefits determinations that the first portion of Section 511 vests the Secretary with authority to decide in the first instance.

There is more. The tail-end of Section 511's jurisdiction-stripping portion specifies that it forecloses review outside of the VJRA scheme through actions

brought "in the nature of mandamus or otherwise." By supplying this example, Congress underscored that Section 511 withdraws jurisdiction only from those kinds of actions that would typically be brought through mandamus—that is, collateral challenges to the Secretary's actual benefits determinations. It does not apply to any manner of litigation that might possibly affect veterans' benefits writ large.[3]

Because it vests courts with the authority to compel official action outside the "ordinary course of litigation," mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *In re United States*, 884 F.3d 830, 834 (9th Cir. 2018) (ultimately quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)). In other words, the writ of mandamus is distinctive because it gives litigants an opportunity to collaterally attack official decision-making, bypassing the usual statutorily prescribed channels and raising the specter of an "end-run around the final-judgment rule." *In re Creech*, 119 F.4th 1114, 1124 (9th Cir. 2024). That is precisely the kind of second-guessing other aspects of Section 511 withdraw from

---

[3] Section 511's residual reference to actions "otherwise" brought against the VA does not broaden this portion of the text's scope. As the Supreme Court explained just last Term, the canons of *noscitur a sociis* and *esjudem generis*, along with "common sense," direct that where the word "otherwise" appears after a specific statutory prohibition, its meaning is "limited" by the more precise term preceding it. *Fischer v. United States*, 603 U.S. 480, 486–87, 489 (2024). Thus, although Section 511 prohibits action in "mandamus or otherwise," the best reading of that text is as confirmation of Congress's intent that Section 511 would withdraw jurisdiction only over those kinds of actions that sound in mandamus (i.e., collateral challenges to agency decisions).

district court jurisdiction. Little wonder, then, that Congress called out the "extraordinary" remedy of mandamus by name when it specified what kind of challenges the statute forecloses; the special procedural mechanism of mandamus dovetails perfectly with the narrow substance of what Section 511 prohibits. By describing the kinds of challenges it meant to prohibit in this particular way, Congress therefore underscored the limited scope of Section 511's jurisdiction-stripping provision.

Section 511's textual emphasis on ensuring finality for VA-specific benefits determinations is also consistent with the statute's context. Through the VJRA, Congress constructed a scheme by which "[t]he agency effectively fills in for the district court" with respect to covered claims. *Axon*, 598 U.S. at 185. That legislative design would become toothless if the district court could re-open decisions already rendered by the agency itself. But the same is not true for claims that "would not possibly have any effect on the benefits" a veteran has "already been awarded." *VCS* 678 F.3d at 1023 (citation omitted). Those claims, which fall outside of the text of Section 511 in any event, would not undermine the broader adjudicative scheme Congress designed through the VJRA if they were resolved in the district court.

True, the text of Section 511 also addresses decisions made pursuant to laws that "*affect*[] the provision of benefits." 38 U.S.C. § 511 (emphasis added). But this lone word should not be read so expansively as to swallow up the whole universe of

11

benefits-related claims. When it comes to determining the scope of an administrative agency's delegated decision-making authority, open-ended clauses of this sort should be given "a non-hyperliteral reading" to "prevent the statute from assuming near-infinite breadth." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 278 (2016). For example, in *FERC*, the Supreme Court considered the scope of a statute granting the Federal Energy Regulatory Commission oversight over "rules and practices 'affecting'" wholesale energy rates. *Id.* at 277. The Court acknowledged the statute could potentially be read to grant the agency oversight authority over "just about everything—the whole economy," given the wide range of factors that "affect" energy prices. *Id.* at 278. But the Court could not "imagine that was what Congress had in mind," because under such a reading, the statute would essentially "never run its course." *Id.* Thus, it adopted a more tempered and "common-sense" interpretation. *Id.*

A "common-sense" interpretation of Section 511 is likewise appropriate here. Taken literally, all manner of laws "affect[] the provision of benefits," 38 U.S.C. § 511, to veterans: the United States Constitution, service eligibility and discharge criteria, the laws of war. But no one would seriously suggest that Section 511 vests the VA Secretary with exclusive interpretive authority for *those* laws—much less authority that is "final" and precludes "review[] by any other official." *Id.* The word "affects" must have some limiting principle.

12

Fortunately, the statutory text itself supplies exactly that limiting principle. Congress, after all, typically does not "introduce a general term that renders meaningless the specific text that accompanies it." *Fischer*, 603 U.S. at 481. And here, use of the general term "affects" does not erase the other text in Section 511 that limits its reach only to benefits schemes the VA actually administers and agency determinations actually made pursuant to those schemes. If Congress had meant to give the VA Secretary exclusive decision-making authority over all possible statutes that affect VA benefits, it could have said so without qualification. It did not. The companion text instead clarifies that Section 511 deals only with the actual "provision of benefits" by the agency and questions that are "necessary" to "decisions" conferring those benefits.

In short, Section 511 emphatically does not grant the agency "*exclusive* jurisdiction to construe" any and all "laws affecting the provision of veterans benefits," nor does it vest the agency with the exclusive right to "consider all issues that might somehow touch upon whether someone receives veterans benefits." *Broudy*, 460 F.3d at 112 (emphasis in original). Otherwise, Section 511 would "require the Secretary, and only the Secretary, to make all decisions related to laws affecting the provision of benefits," sweeping well beyond the targeted displacement of jurisdiction that Congress intended. *Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000). Under the plain text of the statute, claims that do not seek to second-

13

guess the VA's pre-existing, individualized determinations with respect to benefits programs it administers remain subject to district court review, *id.*, regardless of whether they turn on laws that "affect" benefits in some theoretical sense.

Here, the Veterans' Rehabilitation Act claims fail to satisfy Section 511's plain-text requirements. First, the Veterans did not ask the district court to "review[]" any prior benefit decision, as the statute requires in order to withdraw jurisdiction. Far from seeking to dislodge, undermine, or otherwise revise them, they took the Secretary's prior determinations of "law and fact" about their eligibility for benefits as a given. The Veterans instead contested their ability to *reach* previously awarded benefits on account of their significant disabilities, invoking rights independently guaranteed to them by a separate federal statutory guarantee. Accommodations under the Rehabilitation Act are analytically distinct from underlying benefits awards themselves, which the Veterans have never challenged in this litigation. *Cf. Monk*, 2025 WL 473590, at *7 (no Section 511 jurisdictional bar where claims did not require "dissect[ing] VA employees' individual decisions regarding veterans benefits").

To draw this point out, consider the hypothetical of a disabled veteran who sues the VA under the Rehabilitation Act seeking wheelchair-friendly ramps at the entryway to an agency-run medical facility. That veteran's eligibility to receive care at the facility would surely be due to a prior determination by the Secretary. But it

14

would stretch the text of Section 511 past its breaking point to suggest that the veteran seeks judicial "review" of the Secretary's eligibility determination by bringing a Rehabilitation Act claim. The point would be to meaningfully access benefits already awarded, not to collaterally attack the award itself. The same is true here.

The Government's argument also conflicts with the text of the VJRA in another, related manner. The statute withdraws jurisdiction only from those "questions of law and fact" that are "*necessary*" to a decision by the Secretary. 38 U.S.C. § 511 (emphasis added). But nothing about the relief the Veterans sought here is remotely necessary to the Secretary's benefits determinations. Since the Veterans' Rehabilitation Act claims arise under a separate statute that confers separate rights, nothing about the relief they seek was "necessary" for the VA Secretary to afford them benefits under the statutes he administers and within the agency's own understanding of the term. Or, to put things in even simpler terms: If the Veterans' Rehabilitation Act claims were "necessary" to decide before the Secretary could make benefits determinations under statutes the VA administers, then the Secretary would have "necessarily" had to decide them during the course of those prior determinations. He did not.

The prospect that this Court will first need to "determine whether individual Plaintiffs are entitled to VA benefits" and then verify "the scope of those benefits,"

15

as the Government argued in the District Court, is not to the contrary. *See* Federal Defs.' Consolidated Reply Br. in Supp. of their Mot. to Dismiss Pls.' First Am. Compl. 8–9, ECF No. 57, *Powers v. McDonough*, 732 F.Supp.3d 1184 (C.D. Cal. 2024). The Veterans asked the district court to recognize their existing entitlement to benefits solely because those entitlements serve as the factual predicate to their denial-of-access Rehabilitation Act claims. But identifying objectively verifiable background information about individual veterans by drawing on an administrative agency's pre-determined (and here undisputed) record is not remotely the same as asking this Court to "review" that agency's underlying determinations. To the best of amici's knowledge, no jurisdiction-stripping provision has ever been interpreted to preclude an Article III court from acknowledging the fact of an agency's previous factual findings in ancillary litigation. The opposite is usually true: Congress drafts legislation against a "longstanding" presumption that agencies' factual findings can generally attain issue-preclusive effect in subsequent Article III proceedings. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015).

### C. The Veterans' Rehabilitation Act claims do not implicate distinctive agency expertise.

Further strengthening the case for jurisdiction, the Veterans' claims do not implicate statutory rights that fall within the VA's specialized wheelhouse, to which it can "apply distinctive knowledge," *Axon*, 598 U.S. at 186. The Veterans seek reasonable accommodations under a generally applicable statute passed to hold the

16

federal government accountable across-the-board, not a statute that vests any one expert agency (let alone the VA specifically) with exclusive decision-making authority based on that agency's specialized area of knowledge. Because the VA has "no expertise" on "what constitutes a violation under the Rehabilitation Act," it is thus particularly unlikely that Congress intended the VJRA to be the exclusive mechanism for reviewing all Rehabilitation Act claims, *Sierra v. City of Hallandale Beach*, 904 F.3d 1343, 1351–52 (11th Cir. 2018); *see also, e.g.*, *Floyd-Mayers v. Am. Cab Co.*, 732 F. Supp. 243, 247 (D.D.C. 1990) (despite administrative commission's "greater expertise in its specialized field," Article III courts are "better-equipped to resolve disputes arising out of allegations of discrimination in violation of federal . . . civil rights statutes").

For the first time in this litigation, the Government attempts to turn that presumption on its head, suggesting the Rehabilitation Act is actually distinctively suited to agency review. *See* Br. for Appellants 28. This reading has no footing in statutory text or structure. Instead, the Government gestures only toward language directing agencies to "promulgate such regulations as may be necessary to carry out" their Rehabilitation Act obligations. *Id*. at 28–29 (*quoting* Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978 ("Rehabilitation Act") § 504(a), 29 U.S.C. § 794). But directing federal agencies to follow a new law is a far cry from enshrining Congress's preference for agency

17

presentment and adjudication of claims that the agency has violated such a law—a preference Congress typically indicates through an administrative exhaustion requirement, not a generic compliance directive. *Cf. J.L. v. Social Sec. Admin.*, 971 F.2d 260, 264 (9th Cir. 1992), *abrogated on other grounds by Lane v. Pena*, 518 U.S. 187 (1996) (Rehabilitation Act contains "no *per se* exhaustion requirement" and "parties may proceed directly to district court.").

The Government's argument also overlooks the remedies provision of the Rehabilitation Act, Section 505, which expressly contemplates that claims brought under Section 504 will be subject to judicial enforcement and makes no reference whatsoever to initial agency presentment. Section 505 provides that anyone "aggrieved" by any "federal provider of . . . assistance" over violations of the Rehabilitation Act's substantive antidiscrimination protections can enforce their rights through the full suite of "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964." Rehabilitation Act § 505, 29 U.S.C. § 794a. Title VI, in turn, promises "judicial review" of any "department or agency action taken" in violation of its own antidiscrimination directive. 42 U.S.C. § 2000d–2. And it is "beyond dispute" that "private individuals may sue" based on this statutory text, *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (Scalia, J.), without any prior expectation of administrative presentment or exhaustion. Thus, by transposing Title VI's judicial enforcement framework into the Rehabilitation Act context, Section

18

505 further rebuts the Government's suggestion that Congress meant for agencies themselves to enforce Section 504 in the first instance.

### D. The Government's position would deprive veterans of any meaningful opportunity to enforce their rights under the Rehabilitation Act.

Practical considerations likewise strongly counsel in favor of district court review. Because Congress "rarely allows claims about agency action to escape effective judicial review," even an otherwise-exclusive statutory review scheme may not displace Article III jurisdiction where doing so would "'foreclose all meaningful judicial review' of the claim." *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212–13); *see also Jennings*, 583 U.S. at 292 (plurality) (refusing to interpret jurisdiction-stripping provision so broadly as to make certain claims "effectively unreviewable").

Neither the VJRA nor its implementing regulations authorize VA to review the Veterans' Rehabilitation Act claims. Those authorities establish only a limited framework for adjudicating veterans' benefits claims. *See generally* 38 U.S.C. §§ 7104, 7251, 7261, 7292 (a), (c), (d)(1). Under the statute, veterans must first file individual "claims" for "benefits" through the VA itself; they then may challenge those determinations through the VJRA's special statutory review scheme. The agency's regulations, in turn, define a "claim" as a request for the "determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws

administered by the [VA] submitted on an application form prescribed by the Secretary." 38 C.F.R. § 3.1(p). Benefits encompass the "payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the [VA] pertaining to veterans and their dependents and survivors." *Id*. § 20.3(e).

These definitions contain two relevant limitations. First, VA regulations permit the agency's frontline processing offices to consider veterans' claims for benefits only "under the laws administered" by the VA. *Id*. § 3.1(p). But the Rehabilitation Act is not a law administered by the VA; it is a federal anti-discrimination statute that cuts across agencies. VA forms do not even allow veterans to present Rehabilitation Act "claims" or seek relief under the statute, as required by *Id*. Second, and relatedly, accommodations sought under the Rehabilitation Act do not fall within the definition of "benefits" authorized by VA regulations, because the Veterans have no "entitlement to" permanent supportive housing "under laws administered by the" VA. *Id*. § 20.3(e). These two restrictions mean the Veterans' Rehabilitation Act claims are neither "benefits" within the meaning of the VJRA review scheme, nor "claims" susceptible to its adjudication. The VJRA thus provides them with no mechanism by which to make these claims. Sure enough, the Court of Appeals for Veterans Claims has already recognized that "neither the Board [of

Veterans Appeals] nor th[is] Court is authorized to hear actions brought under" the Rehabilitation Act. *Camacho v. Nicholson*, 21 Vet. App. 360, 366 (Vet. App. 2007).

Attempting to sidestep this, the Government appears to suggest the Veterans might somehow tack a Rehabilitation Act claim seeking permanent supportive housing onto the ordinary benefits determination process. *See* Br. for Appellants 30–32. But the Government provides no playbook for how a veteran might pursue such a claim in the face of the agency's own processes and regulations. Instead, it gestures without elaboration at the theoretical possibility a veteran might find some way to "raise[] through VA" such a request, and that the VA could then respond by "either provid[ing] that housing" or (and significantly more likely, given the agency's statutory remit and its own internal regulations) by "determin[ing] that it was not authorized or required" to do so. *Id.* at 31–32.

Set aside, for a moment, the many practical difficulties the Government's threadbare proposal would create for veterans and the agency alike. There is a more serious problem. When Congress sets up a special statutory review scheme that funnels claims through an agency before they proceed to appellate review in a designated Article III court—as it has done with the VJRA—it "effectively" designates the agency to "fill[] in for the district court." *Axon*, 598 U.S. at 185. The upshot is that Congress expects the agency to behave much like a district court would, deploying similar "factfinding and record-developing capabilities." *McNary*,

498 U.S. at 497. But, on the other side of this coin, where the agency cannot assemble an "adequate administrative record" in a manner that "duplicate[s]" the district court's fact-finding role, forcing claims through a scheme that "provide[s] for only a single level of judicial review in the courts of appeals" is "traditionally" disfavored. *Id.* (citations omitted).

Here, the Government's suggested ad hoc presentation of the Veterans' Rehabilitation Act claims carries little-to-no possibility of generating the kind of detailed administrative record the Federal Circuit would need to provide meaningful judicial review if this case were channeled instead through the VJRA's special statutory scheme. Because the VA's own internal regulations do not authorize the agency's claims processing agents to award benefits outside "laws administered" by the VA, it is hard to see how those agents would do anything other than summarily deny these accommodations requests if they were presented to the agency in the first instance. That would leave the Veterans forced to pursue an appeal without any findings of fact about their ability to access VA facilities, the feasibility of alternative relief, or any of the many other particulars that could bear on their rights under the Rehabilitation Act. This is "the practical equivalent of a total denial of judicial review," *McNary*, 498 U.S. at 497, and it counsels further still against applying Section 511 to these claims.

Finally, even if the Veterans could have pursued their Rehabilitation Act claims through the VJRA adjudication scheme (they could not), that process cannot grant them the injunctive relief they sought in this litigation. Rehabilitation Act claimants may recover the full range of "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964." 29 U.S.C. § 794a(2). This includes both "damages" *and* equitable remedies like "injunctive relief." *Sandoval*, 532 U.S. at 279. The VJRA's review system, by contrast, is trained at resolving individual veterans' "claims" for benefits under the VA's laws. *See generally* 38 U.S.C. § 5100 *et seq*. Refereeing the claims administration process is a far cry from awarding the full equitable remedies available under the Rehabilitation Act. *Cf. Camacho*, 21 Vet. App. at 366. And pursuit of equitable relief—not individualized claim adjudication—is at the heart of these Veterans' claims.

In short, the district court properly assumed jurisdiction over the Veterans' Rehabilitation Act claims. Dismissing them based on Section 511 would have left the Veterans in a jurisdictional no man's land—preventing them from pursuing such claims in federal district court *and* the VJRA adjudication process. Surely Congress did not intend that unusual result.

## II. This plain text reading of Section 511 is fully consistent with this Court's decision in *VCS*.

Holding that Section 511 does not preclude district court adjudication of the Veterans' Rehabilitation Act claims also fits comfortably with this Circuit's prior

23

caselaw interpreting the VJRA. In the *en banc* Ninth Circuit's most recent extended treatment of Section 511, *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc), this Court addressed whether it possessed jurisdiction over three class-wide claims brought by veterans' advocacy groups: two challenging the VA for lengthy wait-times to provide mental health treatment and make disability benefits determinations, and another challenging the VA's internal agency procedures on due process grounds. This Court's reasoning and conclusions for how Section 511 applied to those claims fully supports the district court's exercise of jurisdiction here.

Start with the *VCS* plaintiffs' two wait-time claims, which this Court concluded fell within Section 511's jurisdiction-stripping language. The Court began by reasoning it would "undoubtedly" lack jurisdiction to consider an individual veteran's claim of "unreasonabl[e] delay[s]" in the provision of mental health care. *VCS*, 678 F.3d at 1026. It echoed that conclusion with respect to the plaintiffs' claims about lengthy waits for disability benefits determinations. *Id.* at 1029. It then rejected the plaintiffs' efforts to "circumvent" an otherwise obvious jurisdictional bar "by disavowing relief on behalf of any individual veteran" and instead repackaging their claims as an attack on systemic failures. *Id.* at 1026 (mental health claims); *see also id.* at 1030 (disability benefits claims). Even adjudicating the plaintiffs' claims even on a system-wide level would require "evaluating the circumstances of individual

veterans and their requests for treatment" *and* "determining whether the VA handled those requests properly." *Id.* at 1028 (mental health claims); *see also id.* at 1030 (disability benefits claims). Section 511 therefore barred district court review.

This Court drew a different conclusion, however, for the plaintiffs' due process challenge to procedural safeguards VA regional offices had adopted to process disability benefits. That claim, by contrast, did "not challenge decisions at all," let alone seek district court "review" of those decisions. *VCS*, 678 F.3d at 1034. This Court therefore determined it was not covered by Section 511's jurisdictional bar. *Id.* Strengthening that conclusion, this Court pointed to its own comparative "institutional[] competence" evaluating due process claims, *id.* at 1034 n.25, as well as the VJRA's failure to "provide a mechanism" for plaintiffs to bring the claim through its special statutory review scheme, *id.* at 1035.

Here, the Veterans' Rehabilitation Act claims here are analogous to the due process claims this Court permitted in *VCS*, not the delay-related claims this Court rejected. Plaintiffs have not asked this Court to reconsider the VA's benefits determinations by dressing up indisputably barred individual claims as system-level problems. Their claims do not attack the VA's adherence to statutes it has been authorized to administer, nor its provision of benefits within the agency's own definition of the term. They take the VA's prior actions administering its own programs for granted, at both an individual and a systemic level, and "do[]not

challenge [those] decisions at all," *VCS*, 678 F.3d at 1034. They simply seek to vindicate a separate statutory right, created under a law of general applicability, that would enable them to access those pre-determined and undisputed benefits.

Nothing else about *VCS* undermines the district court's exercise of jurisdiction here. *VCS* does not dislodge the Ninth Circuit's general maxim that jurisdiction-stripping provisions must be read narrowly, nor any other longstanding principles that limit the scope of special statutory review schemes. And *VCS* itself approvingly invokes the D.C. Circuit's more detailed framework for applying Section 511, *see VCS*, 678 F.3d at 1024, which that Circuit has developed over the course of its extensive consideration of jurisdiction-stripping under the VJRA. This approach emphasizes that Section 511 does not give the Secretary "*exclusive* jurisdiction" over "all issues that might somehow touch upon whether someone receives veterans benefits," *Broudy*, 460 F.3d at 112 (emphasis in original); *see also VCS*, 678 F.3d at 1030 n.21 (applying *Broudy*'s test but distinguishing its facts).

Finally, *VCS*'s characterization of Congress's goals in passing the VJRA does not support applying Section 511's jurisdictional bar to these claims. *VCS* cited one House Report as indicative of Congress's purpose in enacting Section 511. *See VCS*, 678 F.3d at 1021 (citing H.R. Rep. No. 100-963 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782). Legislative history is unnecessary where—as here—text alone sheds sufficient light on the question at hand. Nevertheless, to the extent that source

26

is relevant to resolving this appeal, it is fully consistent with the district court's exercise of jurisdiction over the Veterans' claims.

The House Report in question discusses Section 511 against the backdrop of the Supreme Court's then-recent decision in *Traynor v. Turnage*, 485 U.S. 535 (1988). But the issue at the heart of *Traynor* is sharply distinguishable from these Veterans' Rehabilitation Act claims. Thus, any effort by Congress to legislatively abrogate that decision would not cut against the district court's exercise of jurisdiction in this case.

*Traynor* was brought by plaintiffs who sought benefits under the G.I. Bill, a statute that provides veterans with tuition assistance and which, critically, is administered by the VA itself. *See Traynor*, 485 U.S. at 538-39. At the time, the statute gave veterans up to ten years to use their benefits, with the possibility of an extension for beneficiaries who suffered a "disability" that was "not the result of [their] own willful misconduct." *Id.* at 538 (citations omitted). The *Traynor* plaintiffs failed to timely use their G.I. Bill benefits on account of their struggles with alcoholism, but applied for them through the VA anyway, arguing they remained eligible under this disability exemption. *Id.* The VA disagreed, concluding alcoholism was a disability attributable to the veterans' own "willful misconduct," and on that basis denied their benefits claims. *Id.*

The veterans sued in federal district court, claiming the VA's interpretation of the G.I. Bill violated the Rehabilitation Act, and in response the Government argued that a precursor to Section 511 divested the district court of jurisdiction. *Id.* at 539. Ultimately, the Supreme Court held that this precursor statute did not withdraw jurisdiction from the plaintiffs' claims. *Id.* at 545. According to the legislative history that the Government and *VCS* reference, Congress enacted Section 511 as a reaction to this decision, superseding pre-existing jurisdiction-stripping language in such a way as to reassert the primacy of "technical VA decision-making" in individual benefits determinations. H.R. Rep. No. 100-963, at 21 (1988), 1988 U.S.C.C.A.N. at 5803.

It does not follow, however, that in responding to *Traynor* Congress meant to insulate the VA from independent judicial oversight with respect to the full universe of possible statutory challenges affecting veterans' benefits, including any possible challenge brought under the Rehabilitation Act. Rather, according to the legislative history the Government itself invokes, the Congress that enacted Section 511 understood *Traynor* narrowly, and in a manner entirely consistent with the targeted interpretation that *amici* offer here: as a case about "an individual's application for benefits," and "the Administrator's refusal to grant such benefits under laws providing benefits to veterans." H.R. Rep. No. 100-963, at 21. In other words, Congress saw *Traynor* as an effort to use district court litigation to dislodge the

28

agency's interpretation of a benefits statute it actually administered, on matters that implicate its distinctive expertise, during the course of an actual benefits determination.

That is precisely the sort of suit the plain text of Section 511 now forecloses. But it is entirely unlike the scenario presented by this case—one in which the plaintiffs assert the Rehabilitation Act as a freestanding source of federal rights, separate and apart from whatever benefits the Secretary has already determined they are eligible to receive. Nothing about the legislative history the Government cites, let alone *Traynor* itself, suggests Section 511 was designed to exclude every possible Rehabilitation Act claim, and certainly not those that take prior benefits determinations for granted and do not even seek benefits offered under statutes administered by the VA.

## CONCLUSION

The district court properly exercised jurisdiction over the Veterans' Rehabilitation Act claims. By its terms, Section 511 withdraws Article III jurisdiction only over claims that would require collateral judicial review of prior VA benefits awards. The Veterans, however, took those past determinations as a given. Instead, in order to access benefits the VA has already awarded them, they sought disability accommodations that fall outside the scope of agency-awarded benefits, and which arise under a statute the agency does not administer. This Court

29

should not read Section 511 so expansively as to cover claims that fall well outside its plain text, particularly since doing so would deprive the Veterans of any meaningful alternative forum.

Dated: February 25, 2025                    Respectfully submitted,

                                            /s/ Evelyn Danforth-Scott

Michelle Fraling                            Evelyn Danforth-Scott
**AMERICAN CIVIL LIBERTIES UNION**          **AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**                                  **FOUNDATION**
915 15th Street, 6th Floor                  425 California Street, Suite 700
Washington, DC 20005                        San Francisco, CA 94104
Tel: (917) 710-3245                         Tel: (212) 549-2653
michelle.fraling@aclu.org                   Fax: 1(866) 339-7328
                                            edanforth-scott@aclu.org

                                            Bridget Lavender
                                            **AMERICAN CIVIL LIBERTIES UNION**
                                                **FOUNDATION**
                                            125 Broad Street, 18th Floor
                                            New York, NY 10004
                                            Tel: (212) 549-2500
                                            blavender@aclu.org

*Counsel for Proposed* Amici Curiae *Legal Scholars*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2025, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Evelyn Danforth-Scott
Evelyn Danforth-Scott
Dated: February 25, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-6576

I am the attorney or self-represented party.

**This brief contains** | 6,844 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Evelyn Danforth-Scott | **Date** | February 25, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**          *Rev. 12/01/22*