No. 24-6576

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

JEFFREY POWERS, et al.,

Plaintiffs-Appellees,

v.

DOUGLAS A. COLLINS, et al.,

Defendants-Appellants

————————————

On Appeal from the United States District Court
for the Central District of California

————————————

**PETITION FOR REHEARING EN BANC**

————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

CHARLES W. SCARBOROUGH
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION AND RULE 40(b)(2) STATEMENT ................................... 1

STATEMENT ......................................................................................... 3

ARGUMENT .......................................................................................... 7

I.  The Rehabilitation Act Does Not Imply A Right Of Action Against Federal Programs ........................................................... 7

II.  The Panel's Merits And Class-Certification Analysis Is Plainly Inconsistent With Statutory Text And With Precedent ...................... 10

    A.  Meaningful Access .........................................................11

    B.  *Olmstead* ......................................................................14

    C.  Class Certification..........................................................17

CONCLUSION .................................................................................... 21

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ..................................................................20

*Clark v. Skinner,*
   937 F.2d 123 (4th Cir. 1991) ...................................................................9

*Cousins v. Secretary of the U.S. Department of Transportation,*
   880 F.2d 603 (1st Cir. 1989) ...................................................................9

*Doe v. Attorney General,*
   941 F.2d 780 (9th Cir. 1991) ...................................................................9

*Doe A v. Spahn,*
   2025 WL 1305360 (D.D.C. May 6, 2025) ...........................................9

*Dukes v. Wal-Mart Stores, Inc.,*
   603 F.3d 571 (9th Cir. 2010) ...........................................................20-21

*J.L. v. Social Security Administration,*
   971 F.2d 260 (9th Cir. 1992) .................................................................10

*LA Alliance for Human Rights v. County of Los Angeles,*
   14 F.4th 947 (9th Cir. 2021) .............................................................. 1-2

*Mark H. v. Hamamoto,*
   620 F.3d 1090 (9th Cir. 2010) .......................................................2, 19

*Moya v. DHS,*
   975 F.3d 120 (2d Cir. 2020) ...................................................................9

*Olmstead v. L.C. ex rel. Zimring,*
   527 U.S. 581 (1999) ...........................................................5, 14, 15-16

*Sai v. DHS,*
   149 F. Supp. 3d 99 (D.D.C. 2015) .......................................................9

*Townsend v. Quasim*,
  328 F.3d 511 (9th Cir. 2003) ........................................................................2, 16

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ........................................................................17, 20

*United States v. Hernandez-Estrada*,
  749 F.3d 1154 (9th Cir. 2014) ........................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................2, 17, 21

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 2000) ........................................................................15

## Statutes:

Rehabilitation Act of 1973,
  Pub. L. No. 93-112, tit. V, 87 Stat. 355 ........................................................7
    29 U.S.C. § 791 ........................................................................8
    29 U.S.C. § 794(a) ........................................................ 1, 8-9, 11, 15
    29 U.S.C. § 794a ........................................................................8

Rehabilitation, Comprehensive Services, and Developmental
  Disabilities Amendments of 1978,
  Pub. L. No. 95-602, tit. I, 92 Stat. 2955 ........................................ 7-8

West Los Angeles Leasing Act of 2016,
  Pub. L. No. 114-226, 130 Stat. 926 ........................................................4

38 U.S.C. § 111 ........................................................................19

38 U.S.C. § 111A ........................................................................19

38 U.S.C. § 8161(3) ........................................................................4

**Executive Branch Materials:**

38 C.F.R. pt. 70 ...............................................................................19

Exec. Order No. 14,296,
  90 Fed. Reg. 20,369 (May 14, 2025)..............................................2, 4

**Legislative Materials:**

H.R. Rep. No. 114-570 (2016) .................................................................4

**Other Sources:**

Home of the Brave, *Appeals Court Upholds Landmark
  Ruling in Homeless Veterans Lawsuit Against the VA*
  (Dec. 24, 2025), https://perma.cc/TKP6-EQ6N.............................................3

*WLA EUL Housing Phasing Plan & Release Parcel Schedule*
  (Nov. 7, 2024), https://perma.cc/A9KK-7CFV.............................................4

## INTRODUCTION AND RULE 40(b)(2) STATEMENT

The Rehabilitation Act bars government programs from discriminating "solely by reason of" disability. 29 U.S.C. § 794(a). That prohibition has been understood to require things like wheelchair ramps or closed captioning—accommodations that ensure disability is not the reason for exclusion.

Here, however, the district court held that the Act required the Department of Veterans Affairs (VA) to do something radically different: build more than two thousand units of housing on its West Los Angeles Campus. The district court's logic was that (1) Veterans with mental disabilities need to reach the Campus to access VA healthcare and (2) they face barriers in reaching the Campus if not housed there. But those premises do not add up to a violation of the Rehabilitation Act, absent proof—nonexistent here—that the *barriers* to access exist "solely by reason of" disability.

This is not the first time this district court has expansively construed its powers in attempting to address homelessness. The same court ordered Los Angeles County to place $1 billion in escrow "to address the homelessness crisis" and offer "shelter or housing to all unhoused individuals in Skid Row within 180 days." *LA Alliance for Human Rights v. County of Los Angeles*, 14 F.4th 947, 952 (9th Cir. 2021), *vacating* 2021 WL 1546235 (C.D. Cal. Apr. 20,

2021) (Carter, J.). There, this Court rejected the district court's arrogation of authority, identifying numerous legal errors. Here, the panel let those errors stand—even after another panel had unanimously stayed the injunction pending appeal.

There is no dispute that Veterans in Los Angeles need more housing. The President has directed VA to provide Campus housing well beyond what the district court ordered. Exec. Order No. 14,296, 90 Fed. Reg. 20,369 (May 14, 2025). VA is in the process of doing that and working more generally to rectify past mistakes in the use of the Campus.

But the en banc Court should not let stand the district court's extraordinary injunction, requiring VA to undertake its Campus-development efforts under judicial superintendence. That issue is exceptionally important, and the panel decision is profoundly incorrect, in ways that will distort Circuit law unless the en banc Court intervenes. The panel's application of the Rehabilitation Act conflicts with the plain text of the statute and with decisions like *Mark H. v. Hamamoto*, 620 F.3d 1090 (9th Cir. 2010), and *Townsend v. Quasim*, 328 F.3d 511 (9th Cir. 2003). And the panel's affirmance of class certification conflicts with *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), by reprising exactly the reasoning the Supreme Court rejected in that case.

The en banc Court can avoid those issues, moreover, by correcting its prior holding that Section 504 of the Rehabilitation Act affords a private right of action against federal programs. Every other court of appeals to have addressed the issue has disagreed with that holding, recognizing that the Act is enforceable against federal programs only through judicial review of agency action on administrative complaints. This Court should bring its outlier precedent into line.

Plaintiffs' lead counsel summed up the panel decision by noting that "'[n]o court in the history of the country has ever issued a decision like this.'" Home of the Brave, *Appeals Court Upholds Landmark Ruling in Homeless Veterans Lawsuit Against the VA* (Dec. 24, 2025), https://perma.cc/TKP6-EQ6N. He was right. Every single one of the criteria for en banc review articulated in Rule 40(b)(2)—a conflict with this Court's precedent, a conflict with Supreme Court precedent, a conflict with other circuits' precedent, and a question of exceptional importance—is satisfied here.

## STATEMENT

1. The Campus is the center of VA's Greater Los Angeles Healthcare System (VAGLAHS). It provides "the bulk of the specialty care" in Los Angeles. 13-ER-2974. Outside the Campus, VAGLAHS operates

- 3 -

numerous other facilities offering primary-care and mental-health services. *See* 10-ER-2258; 13-ER-2973–2974; 13-ER-2981–2982; 13-ER-3132–3133.

After settling a case similar to this one, VA drafted a master plan for the Campus that contemplated "[a]pproximately 1,200 new permanent supportive housing units." 27-ER-6725. Congress enacted the West Los Angeles Leasing Act of 2016, Pub. L. No. 114-226, 130 Stat. 926 (Leasing Act), to "assist VA in carrying out … the draft master plan," H.R. Rep. No. 114-570, at 6 (2016). The Act authorized VA to lease Campus land to private developers of supportive housing. Leasing Act § 2(a), (b)(1), 130 Stat. at 926; *see* 38 U.S.C. § 8161(3) (defining supportive housing).

The Campus currently includes hundreds of beds in transitional shelters and a residential care program, in addition to several hundred units of permanent supportive housing. *See WLA EUL Housing Phasing Plan & Release Parcel Schedule* (Nov. 7, 2024), https://perma.cc/A9KK-7CFV.

Recently, as noted above, the President directed VA to "designate a National Center for Warrior Independence on the … Campus" and "present an action plan" for "hous[ing] up to 6,000 homeless veterans" there. 90 Fed. Reg. at 20,369-20,370.

2.     Several Veterans, and the National Veterans Foundation, brought this suit against VA on behalf of a putative class of "homeless Veterans with [serious mental illness] or [traumatic brain injury] who reside in Los Angeles County."  7-ER-1610.

Three counts, relevant here, seek relief under the Rehabilitation Act. Counts 1 and 3 assert that the Act compels VA to construct on-Campus housing because plaintiffs otherwise lack meaningful access to VA healthcare and because that lack of access places them at risk of not receiving services "'in the most integrated setting appropriate to [their] needs,'" *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (1999).  7-ER-1615–1617.  Count 2 alleges that VA also violates the Act by leasing land to developers who impose income-eligibility restrictions that count Veterans' benefits as income.  7-ER-1616.

The district court held that the Veterans Judicial Review Act (VJRA) did not bar jurisdiction over those claims.  1-ER-236–237.  It certified the proposed class.  1-ER-210.  It partly granted plaintiffs' motion for summary judgment, concluding that "VA's policy of contracting with developers who impose income limitations and count disability benefits as income" violates the Rehabilitation Act.  1-ER-193–194.  And, after a bench trial, the court concluded that by not providing sufficient Campus housing, VA denies

- 5 -

plaintiffs meaningful access to their healthcare benefits and places them "at risk of institutionalization" because they may be hospitalized or jailed if homeless. 1-ER-81.

As a remedy, the court ordered VA to construct "1,800 additional permanent supportive housing units" beyond the Master Plan, "as well as 750 temporary" units. 1-ER-88. And based on its prior ruling that income restrictions on housing are discriminatory if Veterans' benefits are counted as income, the court ordered VA to ensure that "a sufficient number of housing units at the [Campus] are free from" such restrictions, including by building them itself, rather than through developers, if necessary. 1-ER-89–90.

The court then held a series of extraordinary hearings evidencing its intent to superintend VA's management of the Campus in minute detail. *See, e.g.*, 5-ER-1017 ("Over the weekend, I've had some thoughts whether that [land] might be converted to one pickleball court."); 4-ER-806 ("[T]here's no reason that I even have to hook up to sewer. I can run portable toilets in and showers in and I prefer to do that on a temporary basis and get people off the streets.").

After the district court entered final judgment, 1-ER-21, the government filed this appeal and sought a stay pending appeal. The district court

denied a stay, 2-ER-260, but a motions panel of this Court unanimously granted it.

3.     The merits panel, however, affirmed the district court's rulings in relevant respects.  The panel held that the VJRA does not bar jurisdiction, that VA violated the Rehabilitation Act in each of the alleged respects, and that the injunction was proper.  The panel reversed certain other rulings not relevant here.

## ARGUMENT

## I.     The Rehabilitation Act Does Not Imply A Right Of Action Against Federal Programs

The en banc Court can and should reverse the injunction on a ground unavailable to the panel:  Section 504 of the Rehabilitation Act does not provide a right of action against federal programs.

As originally enacted, Section 504 did not apply to federal programs, only to "program[s] or activit[ies] receiving Federal financial assistance." Rehabilitation Act of 1973, Pub. L. No. 93-112, tit. V, § 504, 87 Stat. 355, 394. Congress amended it to extend to "any program or activity conducted by any Executive agency."  Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub. L. No. 95-602, tit. I, § 119(2),

92 Stat. 2955, 2982.  Simultaneously, though, Congress did two things that made clear it was not creating a right of action against federal programs.

*First*, it enacted a remedial provision—Section 505, 29 U.S.C. § 794a. That provision expressly authorizes suits in federal court for two types of Rehabilitation Act violations.  Under § 794a(a)(2), persons aggrieved by a Section 504 violation "by any recipient of Federal assistance or Federal provider of such assistance" can invoke "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act," which provides a private right of action.  And under § 794(a)(1), persons aggrieved by a violation of Section 501 of the Act, *id.* § 791—which forbids disability discrimination by federal agencies as employers—can invoke "[t]he remedies, procedures, and rights set forth in" Title VII of the Civil Rights Act.  By contrast, Section 505 does *not* provide any express right of action against Section 504 violations by federal agencies in their programmatic capacities.  Congress's choice to provide certain rights of action, but not this one, is meaningful.

*Second*, Congress was not silent as to how it expected Section 504 to be enforced against federal programs.  Rather, in amending Section 504 to apply to federal programs, Congress instructed agencies to "promulgate such regulations as may be necessary to carry out" that amendment.  29 U.S.C.

§ 794(a).  Congress thus plainly envisioned agency action under the implementing regulations as the means of "carry[ing] out" the application of Section 504 to federal programs.  Agency actions on Section 504 complaints are reviewable in federal court to the same extent, and in the same manner, as other actions by the agency.

Given all this, every court of appeals that has considered the question—except this one—has concluded that there is no right of action to enforce Section 504 against federal programs.  Rather, the proper means of enforcing Section 504 against an agency is to bring an administrative complaint and seek judicial review if the agency rejects it.  *See, e.g., Moya v. DHS*, 975 F.3d 120, 127-128 (2d Cir. 2020); *Clark v. Skinner*, 937 F.2d 123, 125 (4th Cir. 1991); *Cousins v. Secretary of the U.S. Dep't of Transp.*, 880 F.2d 603, 605-611 (1st Cir. 1989) (en banc) (Breyer, J.); *see also, e.g., Doe A v. Spahn*, 2025 WL 1305360, at *4 (D.D.C. May 6, 2025); *Sai v. DHS*, 149 F. Supp. 3d 99, 111-115 (D.D.C. 2015).

In *Doe v. Attorney General*, 941 F.2d 780 (9th Cir. 1991), this Court reached a different conclusion.  But a year later, the Court recognized that, by directing agencies to promulgate regulations implementing the expansion of Section 504 to federal programs, Congress made clear that "agencies

- 9 -

themselves should take primary responsibility for compliance." *J.L. v. Social Sec. Admin.*, 971 F.2d 260, 265 (9th Cir. 1992). The Court accordingly required that certain Section 504 claims be exhausted before the agency before being brought in federal court. *See id.* at 265-272.

In our opening brief before the panel (at 30 n.2), we said the private-right-of-action issue was not presented here because the VJRA "independently precludes plaintiffs' § 504 claim," but we also suggested that the Court "reconsider" its aberrational precedent "[i]n an appropriate case." Now that the panel has rejected our VJRA preclusion argument, this is itself an appropriate case in which to overrule *Doe* and join the consensus. *See, e.g.*, *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159-1160 (9th Cir. 2014) (en banc) (this Court has "the authority and discretion to decide questions first raised in a petition for rehearing *en banc*," including when Circuit precedent would previously "have rendered an objection futile" (quotation marks omitted)).

## II. The Panel's Merits And Class-Certification Analysis Is Plainly Inconsistent With Statutory Text And With Precedent

If the en banc Court does not dispose of this case on the right-of-action ground, it should reverse the district court's application of the Rehabilitation

- 10 -

Act to the merits of plaintiffs' claims for housing, as well as the district court's certification of a class to pursue those claims. The panel's affirmance of those rulings is starkly inconsistent with the text of Section 504—requiring plaintiffs to show discrimination "solely by reason of" their disabilities, 29 U.S.C. § 794(a)—and with precedents of this Court and the Supreme Court.

### A. Meaningful Access

The crux of plaintiffs' case is their theory that they lack meaningful access to VA healthcare. But in accepting that theory, the panel—like the district court—ignored that discrimination is actionable under Section 504 only when it occurs "solely by reason of" disability, 29 U.S.C. § 794(a).

There is no basis in the record to conclude that any lack of access plaintiffs established was "solely by reason of" the disabilities (serious mental illness or traumatic brain injury, 7-ER-1610) that unite them as a class. None of the evidence the panel invoked—testimony from VA official Dr. Steven Braverman, experts Dr. Benjamin Henwood and Dr. Jonathan Sherin, and plaintiffs Laurieann Wright and Lavon Johnson—comes close to that showing.

Indeed, plaintiffs' testimony refutes it. Ms. Wright identified as her barrier to access not the mental illness (PTSD) that makes her a class member

but the location of her current home ("approximately 65 miles away" from the Campus) and her particular *physical* disabilities, which make it "excruciating" to "sit[] for hours in traffic or on the train" to commute that distance. 1-ER-53–54. And Mr. Johnson, who lives on the Campus, testified that living there has made it easy for his healthcare providers to "find [him]." 17-ER-4332–4333. In other words, he testified that despite his mental disabilities he *does* have access to VA healthcare.

The other testimony did nothing to remedy this essential flaw in plaintiffs' case. Dr. Braverman's testimony suggested that class members might need to visit the Campus to access VA healthcare, as opposed to visiting a satellite location, and Drs. Henwood and Sherin testified about how homelessness may make it hard to access healthcare. But as discussed above, the premises that (1) Veterans with mental disabilities need to reach the Campus to access VA healthcare and (2) they face barriers in reaching the Campus—even if plaintiffs had proven those premises on a class-wide basis, which they did not—do not add up to a Section 504 violation. Rather, Section 504 demands proof that the *barriers* to access exist "solely by reason of" the

disabilities that unite plaintiffs as a putative class. The panel identified no such proof, because there is none.[1]

This legal error warrants en banc review because allowing the panel's opinion to stand would have exceptionally significant implications. Consider that people applying for Social Security benefits may need to visit a Social Security office in person to verify their identities. The panel opinion would seemingly allow a putative class of people with disabilities, who need to visit a Social Security office to obtain disability benefits, to sue the Social Security Administration for establishing an insufficient number of field offices, on the theory that it is difficult for potential applicants to transit the potentially long distances required to visit an office—even if those distances are also hard for people without disabilities to travel. That would be a vast and improper expansion of Section 504.

---

[1] The panel invoked the clear-error standard (Op. 40), construing our objections to the district court's ruling as factual in nature. But our argument is not that the district court incorrectly determined the facts. It is that those facts are legally insufficient to establish that VA violated Section 504.

**B.** *Olmstead*

The panel's acceptance of plaintiffs' *Olmstead* claim equally warrants en banc review. That analysis not only misread *Olmstead* and the statutory text but created additional conflicts with circuit precedent.

*Olmstead* holds that when public entities provide services, they must do so in a manner that "avoid[s] unjustified isolation of individuals with disabilities." 527 U.S. at 597. The *Olmstead* plaintiffs, for example, had been institutionalized for the treatment of mental-health disabilities and sought treatment in community-based settings instead. *Id.* at 593-594. *Olmstead* holds that such isolation is a form of discrimination by reason of disability. But plaintiffs' claim here bears no resemblance to that one.

Plaintiffs' claim here is that *Olmstead* requires VA to provide housing because Veterans are more likely to be hospitalized or jailed if homeless than if housed. Plaintiffs invoke testimony like that of Joseph Fields, who testified that during a period of housing instability he suffered a back injury while bicycling; that that injury led to "[o]n and off" hospitalizations; that while homeless he had "encounters with law enforcement" who would "periodically sweep the sidewalk"; that he acquired an infection from living on the

streets; that he was arrested "[a] couple of times" for things like "tickets"; and that he spent "[a] little bit" of time in jail. 18-ER-4543–4546; 18-ER-4551.

These are of course lamentable circumstances, and they are one reason VA is doing everything in its power to ensure that as many Veterans as possible have safe homes. But for essentially two reasons, the panel—like the district court—erred in concluding that they add up to an *Olmstead* violation.

*First*, the panel—like the district court—misunderstood what it means to "plac[e] 'unhoused veterans at risk of institutionalization'" (Op. 42). As discussed above, "*Olmstead* spoke to segregation of the disabled through unwarranted institutional confinement." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1117 (9th Cir. 2000). Hospitals and jails can be settings of institutional confinement, but that does not mean anyone who is hospitalized or incarcerated is "institutionalized" in the relevant sense. For example, Mr. Fields's hospitalizations to treat a back injury, or his jail stints for "tickets" and the like, are not "institutionalizations" in the *Olmstead* sense—that is, episodes in which he was segregated from the community "solely by reason of" his disability, 29 U.S.C. § 794(a).

*Second*, *Olmstead* does not require public entities to "'provide a certain level of benefits to individuals with disabilities,'" *Olmstead*, 527 U.S. at 603

n.14, or "to create new programs that provide heretofore unprovided services to assist disabled persons," *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003). *Olmstead* simply addresses how public entities must administer the services they do choose to provide. But plaintiffs made no effort to show, and the panel identified no basis to believe, that VA's operation of its existing services subjected plaintiffs to a risk of unjustified isolation by reason of the disabilities that define the class. Rather, the panel's logic was that if VA provides services to Veterans with disabilities, then *Olmstead* requires VA to provide *additional* services that would mitigate the risk of hospitalization or incarceration for those Veterans. That is flatly inconsistent with *Townsend*.

Like its meaningful-access analysis, the panel's *Olmstead* analysis could have exceptionally important implications for government programs. Consider Medicare's practice of covering GLP-1 drugs (like Ozempic) for diabetes or cardiovascular disease but not weight loss. Obesity is not a disability, but it can be a consequence of disabilities, such as major depressive disorder. On the panel's logic, *Olmstead* might well require Medicare to cover GLP-1 drugs for weight loss, to reduce the chance that people with disabilities (like major depressive disorder) would wind up in hospitals. That would be a vast and improper expansion of *Olmstead*.

- 16 -

### C.   Class Certification

Finally, the nature of plaintiffs' meaningful-access and *Olmstead* claims makes clear that the district court should never have certified a class to pursue those claims.  The panel's affirmance of class certification squarely conflicts with *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

1.   "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Id.* at 348.  Among its prerequisites is "commonality"—the requirement that "class members 'have suffered the same injury,'" not "merely … a violation of the same provision of law."  *Id.* at 349-350.  To satisfy that requirement, "claims must depend upon a common contention … of such a nature that it is capable of classwide resolution," meaning "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.

That requirement can be satisfied for Rehabilitation Act claims where the challenged practices affect class members in a common way and where the principles articulated in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), would allow an indivisible remedy rather than one specific to individual plaintiffs.

But here, no component of plaintiffs' claims for housing was susceptible to class treatment.

Start with the merits. As discussed above, the meaningful-access and *Olmstead* claims rest on the premise that plaintiffs cannot access VA healthcare. But the fact that a person is a class member—a Veteran in the LA area with serious mental illness or traumatic brain injury—says nothing about whether that person can access VA healthcare. To make that determination, one would need to ask questions like:

- What healthcare services does he or she need?

- Are those services available only at the Campus, or also at other VAGLAHS facilities?

- Where does the person live, relative to the closest facility at which he or she can obtain needed care?

- What difficulties does the person face in commuting that distance?

And the answers vary widely within the class. For example, the challenges faced by Laurieann Wright, who (as discussed above) lives far from the Campus and has particular physical disabilities that make it hard to commute, are completely different from those of four of the other five named plaintiffs, who already live on the Campus. 10-ER-2247; 17-ER-4278; 17-ER-4306; 18-

ER-4537. The analysis of whether those plaintiffs have access to VA healthcare bears no resemblance to the analysis for Ms. Wright.

The remedy is likewise not susceptible to class treatment. Even if plaintiffs could make a class-wide showing that they cannot access VA healthcare without reaching the Campus—and a class-wide showing that they cannot practicably reach the Campus, even though most named plaintiffs already live there—it would not follow that they are all entitled to Campus housing as an accommodation. The reasonableness of an accommodation "'depends on … individual circumstances'" and requires "'fact-specific'" analysis. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010). For example, a plaintiff who lived far from the Campus, but could sit in a car, might be able to access the Campus through VA's Beneficiary Travel program or Veterans Transportation Service, *see* 38 U.S.C. §§ 111, 111A; 38 C.F.R. pt. 70, and thus not need Campus housing.

And even if plaintiffs had established a class-wide entitlement to Campus housing, there would be another commonality problem. In a Rule 23(b)(2) class action, like this one, the members of the class are not identified. So an order requiring VA to provide housing to the class would not answer who, exactly, should receive housing. To establish an entitlement to one of

the court-ordered housing units, a Veteran would have to make an obviously individualized showing that he was actually a class member. That is itself a barrier to class treatment.

Perhaps seeking to surmount that problem, the district court ordered VA simply to construct a particular number of units. But even injunctions against a policy cannot be "broader than necessary to provide complete relief to each plaintiff with standing to sue." *CASA*, 606 U.S. at 861. So the only permissible injunctive relief for plaintiffs' claims could be a requirement for VA to provide housing to *plaintiffs* who need it. And such relief cannot be administered on a class-wide basis because it requires an individualized analysis of who *is* a plaintiff.

2. The panel relied on a pre-*Wal-Mart* statement that "the commonality requirement is satisfied 'where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" Op. 37 (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)). But the Supreme Court rejected that reasoning in *Wal-Mart*. There, this Court concluded that the plaintiffs had raised "the common question whether Wal–Mart's female employees nationwide were subjected to a single set of" discriminatory policies, *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 612 (9th Cir.

2010) (en banc) (emphases omitted), but the Supreme Court reversed, explaining that "'[w]hat matters to class certification … is not the raising of common "questions"—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation,'" *Wal-Mart*, 564 U.S. at 350. Here, for the reasons discussed above, the questions raised by plaintiffs' claims cannot be answered on a class-wide basis. The panel's reliance on abrogated circuit precedent is yet another basis for rehearing en banc.

## CONCLUSION

The Court should grant rehearing en banc.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
CHARLES W. SCARBOROUGH

 */s/ Daniel Winik*
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*
  *daniel.l.winik@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)** <u>No. 24-6576</u>

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for rehearing en banc is *(select one)*:

[ x ] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words: <u>4,198</u>.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** <u>*/s/ Daniel Winik*</u>          **Date** <u>February 6, 2026</u>